SEYFARTH SHAW LLP
Karen A. Rooney (SBN 096013)
krooney@seyfarth.com
Eileen C. Zorc (SBN 233797)
ezorc@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Petitioner
COUNTRYWIDE SECURITIES CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COUNTRYWIDE SECURITIES CORPORATION, <br><br> Petitioner, <br><br> v. <br><br> BRIAN VARGA <br><br> Respondent. | Case No. CV 09-4134 PA (Ex) <br><br> **NOTICE OF HEARING ON PETITION TO VACATE ARBITRATION AWARD IN PART; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAREN A. ROONEY** <br><br> Date:  August 10, 2009 <br> Time:  1:30 p.m. <br> Courtroom:  15 |

TO THE COURT, THE CLERK OF COURT AND RESPONDENT BRIAN VARGA AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on August 10, 2009, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 15 of the above-entitled Court, located at 312 N. Spring Street, Los Angeles, California, in the event that the Court does not remand this action to Los Angeles Superior Court, petitioner Countrywide Securities Corporation (CSC) will, and hereby does move for an order vacating in part the arbitration award issued by JAMS Arbitrator the Honorable Stephen E. Haberfeld in *Brian Varga, an individual, v. Countrywide Securities Corporation, a business entity*, JAMS No. 1425001975 (Award).  In

bringing this motion, Countrywide does not in any way waive its arguments in its Motion to Remand that this Court lacks jurisdiction over this action and/or that "error of law" is the proper standard of review.

The following determinations in the Award are the subjects of this petition:

1. Respondent's claim for wrongful discharge states a claim upon which relief can be granted under California law because, although respondent was an at will employee, the parties' arbitration agreement altered his at will status to "something else," citing *PaineWebber v. Agron*, 49 F.3d 347, 352 (8th Cir. 1995). (Declaration of Karen A. Rooney, Ex. A at 10:20-11:17);

2. Respondent proved his wrongful discharge claim. (*Id.* at 10:21-12:7); and

3. In addition to breach of contract damages of $1,890,000 plus interest (which petitioner is not contesting and has paid respondent), respondent should also recover wrongful termination (tort) damages of $2,278,700 plus interest pursuant to the CSC Change in Control Plan. (*Id.* at 10:21-12:7, 12:13-18 and 14:15-15:12).

CSC has already paid Varga for the part of the Award for Varga's breach of contract claim and does not dispute that part of the Award.

This petition will be based on the grounds that the Arbitrator manifestly disregarded California law in at least three respects in the Award: 1) the Award allows Varga to recover under a "wrongful discharge" claim without him having identified or relied upon any public policy; 2) despite the fact that Varga specifically agreed that his employment was "at will," the Award finds an "implied" agreement requiring cause for the termination of his employment; and 3) the Award determines, contrary to California law, that an employer needs more than a good faith belief to terminate the employment of an employee.

Therefore, petitioner requests that this Court vacate in part and/or correct the Arbitration Award as follows:

LA1 6887741.5 / 35422-000133

1.      Paragraphs 6, 12 (in part) and 14-16 of the Award, "Determinations" (6:14-19; 10:4-5; 10:21-12:12), the discussion and determination of respondent's wrongful termination claim, and paragraphs 2(C) and (D) of the Award, "Arbitration Award" (14:15-15:12) which award respondent damages for wrongful termination should be deleted from the Arbitration Award and the total amount of the award should be adjusted accordingly; and

This Petition is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on June 17, 2009.

This Petition is based on this Notice of Amended Petition and Amended Petition, the attached Memorandum of Points and Authorities, the Declaration of Karen A. Rooney dated July 20, 2009, any reply papers that may be subsequently filed in support of this Petition, the papers and records on file with this Court, and upon such other oral and/or documentary evidence as may be presented at or prior to the hearing on this Petition.

DATED: July 20, 2009                        SEYFARTH SHAW LLP

                                                           /s Karen A. Rooney
                                            By_____
                                                           Karen A. Rooney
                                                           Eileen C. Zorc
                                            Attorneys for Petitioner
                                            COUNTRYWIDE SECURITIES
                                            CORPORATION

LA1 6887741.5 / 35422-000133

# **TABLE OF CONTENTS**

Table of Authorities .......................................................................................... ii

Preliminary Statement ....................................................................................... 1

Statement of Facts ............................................................................................. 1

Legal Argument ................................................................................................. 4

I.    THERE IS NO TORT CLAIM FOR TERMINATION WITHOUT "JUST CAUSE" IN CALIFORNIA ............................................................ 4

    A.    California Law Makes a Clear Distinction Between Tort and Contract Claims in the Employment Context ..................................... 4

    B.    Recovery For "Wrongful Discharge" Requires More Than "Just Cause" – It Requires a Violation of Public Policy ............................ 6

II.    THE ARBITRATOR IGNORED CALIFORNIA LAW AND CREATED A NEW TORT CLAIM FOR TERMINATION WITHOUT "JUST CAUSE" ..................................................................... 7

    A.    It Is Undisputed That Varga Was An At Will Employee ................... 7

    B.    CSC Repeatedly Advised The Arbitrator That There Was No Legal Basis For Varga's Tort Claim ..................................................... 8

    C.    The Arbitrator Deliberately Decided Not To Follow California Law ..................................................................................................... 9

    D.    There Is No Legal Support For This Expansion of California Law ................................................................................................... 11

    E.    Even If There Were Such A Tort, The Arbitrator Found That CSC Had "Just Cause" For The Termination Decision ..................... 13

III.    THE AWARD SHOULD BE VACATED FOR MANIFEST DISREGARD OF THE LAW ........................................................... 14

    A.    The "Manifest Disregard of the Law" Standard ............................. 14

    B.    Examples of "Manifest Disregard" ................................................ 14

        1.    Ignoring Applicable Law ...................................................... 15
        2.    Legal Irreconcilability with Undisputed Facts ........................ 16
        3.    Legal Impossibility .............................................................. 17

    C.    The Arbitrator Knowingly Rejected California Law And Thus Exceeded His Powers ..................................................................... 17

Conclusion ...................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*American Postal Workers Union AFL-CIO v. United States Postal Serv.,*
   682 F.2d 1280 (9th Cir. 1982), *cert. denied*, 459 U.S. 1200, 75 L. Ed. 2d
   431, 103 S. Ct. 1183 (1983) ............................................................................. 16

*Comedy Club, Inc. v. Improv West Associates,*
   553 F.3d 1277 (9th Cir. 2009) ............................................................. 14, 15, 16

*Coutee v. Barington Capital Group, L.P.,*
   336 F.3d 1128 (9th Cir. 2003) ....................................................................... 16

*Freightliner, LLC v. Teamsters Local 305,*
   336 F.Supp.2d 1118 (D. Or. 2004) ........................................................... 14, 16

*Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC,*
   319 F. 3d 1060 (8th Cir. 2002) ....................................................................... 15

*Halligan v. Piper Jaffray, Inc.,*
   148 F.3d 197 (2d Cir. 1998) .................................................................. 9, 10, 16

*Hardy v. Walsh Manning Securities, L.L.C.,*
   341 F.3d 126 (2d Cir. 2003) ....................................................................... 11, 17

*Metoyer v. Chassman,*
   504 F.3d 919 (9th Cir. 2007) ......................................................................... 13

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,*
   44 F.3d 826 (9th Cir. 1995) ........................................................................... 14

*Montes v. Shearson Lehman Brothers, Inc.,*
   128 F.3d 1456 (11th Cir. 1997) ............................................................. 9, 14, 16

*New York Telephone Company v. Communications Workers of America
   Local 1100,*
   256 F.3d 89 (2d Cir. 2001) ....................................................................... 10, 15

*PaineWebber v. Argon,[sic]*
   49 F.3d 347 (8th Cir. 1995) ................................................................. 10, 11, 12

*Schoenduve Corp. v. Lucent Technologies, Inc.,*
   442 F.3d 727 (9th Cir. 2006) ..................................................................... 14, 16

*Shearson Hayden Stone, Inc. v. Liang,*
   653 F.2d 310 (7th Cir. 1981) ..................................................................... 10, 11

*Smith v. Kerville Bus Co.,*
   709 F.2d 914 (5th Cir. 1983) ......................................................................... 12

*Truck Drivers Local 705 v. Schneider Tank Lines,*
   958 F.2d 171 (7th Cir. 1992) ......................................................................... 11

-ii-

*Wilko v. Swan*,
  346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed. 2d 526 (1989) ................................................ 18

**STATE CASES**

*American Computer Corp. v. Superior Court*,
  213 Cal. App. 3d 664 (1989) ............................................................. 6

*Cable Connection, Inc. v. DIRECTV, Inc.*,
  44 Cal. 4th 1334 (2008) ................................................................. 4, 9

*Camp v. Jeffer, Mangels, Butler & Marmaro*
  35 Cal. App. 4th 620 (1995) ............................................................ 13

*Cotran v. Rollins Hudig Hall Int'l, Inc.*,
  17 Cal. 4th 93 (1998) ................................................................ 6, 13

*Cruey v. Gannett Co.*,
  64 Cal. App. 4th 356 (1998) ............................................................ 13

*Davis v. Consolidated Freightways*,
  29 Cal. App. 4th 354 (1994) ............................................................. 7

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988) ........................................................... 1, 5, 6, 8

*Gantt v. Sentry Insurance*,
  1 Cal. 4th 1083 (1992) ............................................................. 5, 6, 7

*Guz v. Bechtel National, Inc.*,
  24 Cal. 4th 317 (2000) .......................................................... 5, 7, 8, 12

*Haggard v. Kimberly Quality Care, Inc.*,
  39 Cal. App. 4th 508 (1995) ............................................................ 13

*Halvorsen v. Aramark Uniform Services, Inc.*,
  65 Cal. App. 4th 1383 (1998) ....................................................... 13, 17

*Jersey v. John Muir Medical Center*,
  97 Cal. App. 4th 814 (2002) ............................................................. 6

*Silva v. Lucky Stores, Inc.*,
  65 Cal. App. 4th 256 (1998) ............................................................. 7

*Starzynski v. Capital Public Radio, Inc.*,
  88 Cal. App. 4th 33 (2001) ......................................................... 13, 17

*Stevenson v. Superior Court*,
  16 Cal. 4th 880 (1997) ................................................................. 6

*Tameny v. Atlantic Richfield Co.*,
  27 Cal. 3d 167 (1980) ................................................................ 5, 6

LA1 6887741.5 / 35422-000133

*Tanner v. Title Insurance & Trust Co.,*
   20 Cal. 2d 814 (1942) ............................................................................ 12

*Tollefson v. Roman Catholic Bishop*
   219 Cal. App. 3d 843 (1990) .............................................................. 13

*Turner v. Anheuser-Busch, Inc.,*
   7 Cal. 4th 1238 (1994) ........................................................................ 6

*Wien & Malkin LLP v. Helmsley-Spear, Inc.,*
   12 A. D. 3d 65 (N.Y. App. Div. 2004) ............................................ 17

**FEDERAL STATUTES**

5 U.S.C. § 7311 .................................................................................... 16

9 U.S.C. § 10(a)(4) .............................................................................. 14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600 ...................................................... 15

Cal. Labor Code §§ 201-204 .............................................................. 3

Cal. Labor Code § 2922 ................................................................ 5, 18

**OTHER AUTHORITIES**

Judicial Council of California Civil Jury Instructions (CACI), 2009 edition,
   Instruction 2422 ................................................................................ 5

*Williston on Contracts*, vol. 5, § 1293 .......................................... 12

LA1 6887741.5 / 35422-000133

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **Preliminary Statement**

Countrywide Securities Corporation (CSC) seeks to vacate that part of an arbitration award issued May 12, 2009 (the Award) that finds in favor of Varga on his tort claim for wrongful termination.  In one fell swoop, this Award eviscerates decades of California case law regarding "at will" employment, and threatens the co-existence of strong public policies in favor of at will employment and arbitration.  The Award holds that an employee cannot be both at will and a party to an arbitration agreement; and that, if an at will employee who has signed an arbitration agreement sues, the employer cannot invoke the employee's at will status in its defense.  There is no California (or federal) law that requires an employer to choose between at will employment, on the one hand, and arbitration, on the other hand.  The Award also creates a new tort cause of action for "wrongful termination" – a claim that was soundly rejected over 20 years ago by the California Supreme Court in *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 665 (1988).

Throughout the arbitration, CSC told the Arbitrator that Varga's tort claim for wrongful termination was not viable and was completely contrary to California law.  Thus, the Arbitrator knew he was disregarding California law when he ruled in Varga's favor and confirmed this by calling his decision the "better and prevailing view nationally."

This Court has the authority to vacate an arbitration decision when an Arbitrator "manifestly disregards the law."  The Court should exercise that authority here and vacate the Award of tort damages to Varga.

### **Statement of Facts**

The Employment Relationship  Varga was employed by CSC as a Treasury Trader and co-head of the U.S. Treasury desk from July 10, 2006, to February 8,

1   2008.  (*See* Declaration of Karen A. Rooney dated July 20, 2009, at ¶ 2 ("Rooney
2   Decl."))

3         Varga entered into a written employment agreement with CSC on June 14,
4   2006, which required CSC to pay Varga $2,250,000 per year for two-years.  It also
5   contained an express "at will" provision:  "Employment at Countrywide is at the
6   mutual consent of both Countrywide and the employee and may be terminated by
7   either Countrywide or the employee at any time, with or without cause, and with or
8   without notice."  (Rooney Decl. ¶ 5, Ex. 4.)  (Varga also signed <u>three</u> other at will
9   agreements.  (Rooney Decl., ¶¶ 2, 4, 6, Exs. 6, 301, 302.) )  Varga's employment
10  agreement also provided that, if Varga was dismissed "without cause" (including
11  "insubordination") before June 30, 2008, he would receive the "balance of [his]
12  salary through June 30, 2008."  (Rooney Decl. ¶ 5, Ex. 4.)

13        <u>The Dismissal</u>  On February 7, 2008, Varga submitted bids on CSC's behalf
14  in an auction for 30-year Treasury bonds.  After Varga submitted the bids, the
15  market dropped suddenly and Varga's bid resulted in a "tremendous monetary loss
16  [approximately $844,000,000]" to CSC.  (Rooney Decl., ¶ 3, Ex. A at 11:10-17
17  (amount of loss detailed at 9:2-8)).

18        On February 8, 2008, CSC terminated Varga's employment based on his
19  disastrous actions during the auction.  Because CSC believed it had "cause" to
20  dismiss Varga under the employment agreement (specifically "insubordination"), it
21  did not pay Varga the balance of the payments that would have been due if the
22  dismissal had been without cause.

23        <u>The Hearing</u>  When Varga became a CSC employee, he signed an arbitration
24  agreement which required him to arbitrate "all claims or controversies arising out
25  of, relating to or associated with the Employee's employment with the Company
26  that the Employee may have against the Company or that the Company may have
27  against the Employee."  (Rooney Decl. ¶ 2, Ex. 6.)  The Arbitration Agreement: (i)
28  contains an express "at will" provision ("This Agreement is not, and shall not be

1  construed to create, any contract of employment, express or implied, nor shall this

2  Agreement be construed in any way to change the status of the Employee from at

3  will."); and (ii) provides that any award is reviewable for errors of law.  (*Id.*, Ex. 6

4  at ¶ 10.)

5        On April 14, 2008, Varga filed a demand for arbitration under the

6  Arbitration Agreement with the Judicial Arbitration and Mediation Services

7  ("JAMS").  Varga alleged seven causes of action, five of which went to hearing:

8  breach of written contract, in which Varga sought to recover the guaranteed cash

9  bonuses and deferred cash payments based on the theory that his termination was

10  not for "cause" as defined in the employment agreement; violation of *California*

11  *Labor Code* §§ 201-204; attempted extortion based on CSC's post-termination

12  settlement discussions with Varga; intentional infliction of emotional distress; and

13  wrongful discharge (tort) based on Varga's allegation that CSC did not have "just

14  cause" for the termination of his employment.  (Rooney Decl. ¶ 2, Ex. 19.)

15  <u>The Award</u>  The Hon. Stephen E. Haberfeld (Ret.) conducted a five-day

16  hearing in February 2009.  On May 26, 2009, the Arbitrator issued the final Award

17  in which he found for Varga on his breach of contract claim and awarded Varga

18  $2,149,750 ($1,890,000 for the amounts remaining to be paid under the

19  employment agreement plus pre-award interest of $259,750).  CSC has paid Varga

20  this part of the Award.  (Rooney Decl. ¶ 3, Ex. A.)

21        The Award also found for Varga on his "wrongful discharge" (tort) claim,

22  despite the fact that it is undisputed that Varga was an at will CSC employee and

23  never alleged a public policy violation.  The Arbitrator departed from California

24  law and determined that CSC had to have "just cause" for its termination decision

25  and that, although CSC had a "good faith belief" that Varga had been

26  insubordinate, this did not constitute "just cause."  The Arbitrator concluded that

27  the termination was "wrongful"  and that Varga should recover what he would

28  have earned had he remained employed through the June 30, 2008 term of his

1   agreement--a Change in Control payment of $2,250,000, $28,700 for health

2   insurance and $150,000 in pre-award interest.  (*Id.*)

3        The Petition to Vacate  On May 27, 2009, CSC filed a petition to vacate the

4   Arbitration Award in the Superior Court of California, County of Los Angeles on

5   the ground that the Arbitrator erred as a matter of law (a standard of review

6   recognized by the parties' agreement and California law) in finding for Varga on

7   his wrongful termination claim.  On June 9, 2009, Varga removed the petition to

8   this Court on diversity grounds and filed a petition to confirm the Arbitration

9   Award.  Varga takes the position that this Court may not review the Arbitration

10  Award for errors of law but, rather, may only review it for a "manifest disregard of

11  the law."  (Rooney Decl. ¶¶ 16-17.)

12       CSC filed a Motion to Remand which is calendared for hearing on August

13  10, 2009, and argued that, if this Court cannot apply the parties' agreed-upon

14  standard of review, *i.e.,* "errors of law," the case <u>must</u> be remanded to the State

15  Court which is authorized to do so.  *Cable Connection, Inc. v. DIRECTV, Inc.*, 44

16  Cal. 4th 1334, 1361, 1364 (2008).  If the Court retains this action, CSC asks it to

17  consider and rule upon this petition to vacate the award under the FAA—the

18  authority which Varga claims must be applied.  While CSC believes that the

19  Award should be reviewed under the agreed–upon "error of law" standard, CSC is

20  also entitled to have this Court vacate the award (as it relates to the wrongful

21  discharge claim) pursuant to the FAA based on a "manifest disregard of the law"

22  standard.

23                          **Legal Argument**

24  **I.    THERE IS NO TORT CLAIM FOR TERMINATION WITHOUT**

25        **"JUST CAUSE" IN CALIFORNIA**

26        **A.    California Law Makes a Clear Distinction Between Tort and
               Contract Claims in the Employment Context**

27

28

1    Employment relationships in California are "fundamentally contractual."

2    *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 350 (2000); *Foley v. Interactive*

3    *Data Corp.*, 47 Cal. 3d 654, 696 (1988).  California law does not allow for the

4    recovery of tort damages for a termination—such as those awarded here—unless

5    there has been a violation of a statute or other public policy.  *Foley*, 47 Cal. 3d at

6    667-68; *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172  (1980).

7    There is no public policy requiring "just cause" for the termination of

8    employment.  On the contrary, California has a strong public policy in favor of "at

9    will" termination.  *Cal. Labor Code* §2922; *Gantt v. Sentry Insurance*, 1 Cal. 4th

10   1083, 1094 (1992) (absent a contract, an employee may be terminated at any time

11   with or without good cause or even for an "arbitrary and irrational reason.")  As

12   the California Supreme Court explained in *Guz*:

13   > A breach of the contract may also constitute a breach of
14   > the implied covenant of good faith and fair dealing. But
     > insofar as the employer's acts are directly actionable as a
15   > breach of an implied-in-fact contract term, a claim that
     > merely realleges that breach as a violation of the
16   > covenant is superfluous. This is because, as we explained
     > at length in *Foley*, the remedy for breach of an
17   > employment agreement, including the covenant of good
     > faith and fair dealing implied by law therein, is solely
18   > contractual. In the employment context, an implied
     > covenant theory affords no separate measure of recovery,
19   > such as tort damages. (*Foley, supra,* 47 Cal. 3d 654, 682-
     > 700.) Allegations that the breach was wrongful, in bad
20   > faith, arbitrary, and unfair are unavailing; there is no tort
     > of 'bad faith breach' of an employment contract.

21   *Guz*, 24 Cal. 4th at 352; *see also Foley*, 47 Cal. 3d at 699-700.

22   Thus, under California law, there are only two types of termination-based

23   claims:  contract claims and public policy claims.  Contract claims assert that the

24   employer has breached some agreement between the parties (typically, an express

25   agreement requiring good cause for termination).  Damages for breach of an

26   employment contract with a specified term (like the one here) include payment of

27   wages "up to the end of the term of the contract."  Judicial Council of California

28   Civil Jury Instructions (CACI), 2009 edition, Instruction 2422.

-5-

1    Tort damages are available <u>only</u> when an employee proves that the

2    termination violated a public policy.  *Foley*, 47 Cal. 3d at 667-68; *Tameny v.*

3    *Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980) (wrongful discharge claim

4    depends upon "a duty imposed by law upon all employers in order to implement

5    the fundamental public policies embodied in the state's penal statutes" and not

6    upon an agreement—express or implied—between the employer and the

7    employee).  These damages include payment of wages the employee "would have

8    earned for the length of time the employment was reasonably certain to continue."

9    CACI, Instruction 2433.

10   **B.    Recovery For "Wrongful Discharge" Requires More Than "Just**
11   **Cause" – It Requires a Violation of Public Policy**

12   To prove wrongful discharge, Varga would have to: identify a "fundamental

13   public policy"; and demonstrate that the termination of his services violated that

14   fundamental public policy.  *Gantt v. Sentry Ins.*, 1 Cal. 4th at 1096.  A

15   "fundamental public policy" must: (1) be delineated by constitutional, statutory, or

16   regulatory provisions; (2) be "fundamental and substantial" and (3) "inure to the

17   benefit of the public."  *Jersey v. John Muir Medical Center*, 97 Cal. App. 4th 814,

18   821 (2002); *Stevenson v. Superior Court,* 16 Cal. 4th 880, 890 (1997).  A private

19   agreement between parties is not, and can never be, a "public policy."  *Foley v.*

20   *Interactive Data Corp.*, 47 Cal. 3d at 669; *Turner v. Anheuser-Busch, Inc.*, 7 Cal.

21   4th 1238, 1257 (1994) ("[t]he tort of wrongful discharge is not a vehicle for

22   enforcement of an employer's internal policies or the provisions of its agreements

23   with others.  [The] failure to identify a statutory or constitutional policy that would

24   be thwarted by [the] alleged discharge dooms [the] cause of action").  *See also*

25   *American Computer Corp. v. Superior Court*, 213 Cal. App. 3d 664, 668 (1989).

26   Thus, where a termination-based tort claim is based upon some factor other than a

27   claimed public policy, the claim must fail.  *See Cotran v. Rollins Hudig Hall Int'l,*

28

-6-

1   *Inc.*, 17 Cal. 4th 93, 109 (1998); *Silva v. Lucky Stores, Inc.*, 65 Cal. App. 4th 256

2   (1998).

3   **II.    THE ARBITRATOR IGNORED CALIFORNIA LAW AND**

4   **CREATED A NEW TORT CLAIM FOR TERMINATION**

5   **WITHOUT "JUST CAUSE"**

6   **A.    It Is Undisputed That Varga Was An At Will Employee**

7   Varga signed four separate "at will" acknowledgements in connection with

8   his employment:  (1) the employment agreement ("[e]mployment at Countrywide

9   is at the mutual consent of both Countrywide and the employee and may be

10  terminated by either Countrywide or the employee at any time, with or without

11  cause, and with or without notice"); (2) the Arbitration Agreement ("nor shall this

12  Agreement be construed in any way to change the status of the Employee from at

13  will"); (3) an acknowledgement of receipt of the Employee Handbook; and (4) a

14  job application.  (Rooney Decl. ¶¶ 2-6, Exs. 4, 6, 301, 302.)  Varga also testified at

15  the hearing that he was an at will employee.  (Rooney Decl. ¶ 13, Ex. I (Testimony

16  of Brian Varga taken February 5, 2009, at 922:19-923:7, 1000:18-1001:5).)

17  Under California law, where the employment relationship is "at will," any

18  claim that the termination was without "good cause" or "just cause" must fail.  *See*

19  *Guz,* 24 Cal. 4th at 349-52; *see also Davis v. Consolidated Freightways*, 29 Cal.

20  App. 4th 354, 366 (1994) ("[P]laintiff argued on appeal simply that the existence

21  of an implied-in-fact contract to terminate only for good cause is an issue of fact

22  which cannot be resolved on a motion for summary judgment.  He is mistaken.").

23  Indeed, an employer is entitled to discharge an at will employee even for "an

24  arbitrary or irrational reason."  *Gantt v. Sentry Insurance*, 1 Cal. 4th at 1094.

25  Varga alleged a separate tort claim for "wrongful termination," but his

26  theory was purely contractual--that CSC entered into an implied agreement that

27  Varga's employment could only be terminated for "just cause" (even though Varga

28  signed four at will agreements).  (Rooney Decl. ¶ 2, Ex. 19.)  Varga did not even

1   <u>allege</u> that CSC's termination decision violated any fundamental public policy,

2   much less prove it.  (*Id.*; *id.* at ¶ 8, Ex. C; and ¶ 13, Ex. I at 1196:25-1203:9.)  In

3   awarding Varga tort damages under this theory, the Arbitrator overturned over 20

4   years of California law.  *See Foley v. Interactive Data Corp.*; *Guz v. Bechtel Nat'l,*

5   *Inc.*, 24 Cal.4th at 335-336.

6
        **B.    CSC Repeatedly Advised The Arbitrator That There Was No**
7             **Legal Basis For Varga's Tort Claim**

8        There is no doubt here that the Arbitrator knew full well the California law

9   regarding recovery of tort damages upon termination and chose to disregard it.

10  There is no dispute that the Arbitrator knew about California law when he entered

11  the Award and that he simply decided not to follow it.

12        Soon after Varga filed his arbitration claim, CSC moved to dismiss

13  respondent's wrongful termination claim based on the law described above.

14  (Rooney Decl., ¶ 8 and Ex. B.)  The Arbitrator denied petitioner's motion and held

15  that the "claim for wrongful discharge states a claim for which relief may be

16  granted under California law."  He further opined that, if "called upon to make that

17  determination," *i.e.*, whether an at will employee who signs an arbitration

18  agreement and is terminated without cause can recover tort damages, <u>a California</u>

19  <u>or federal court "most likely...  would adopt the better and prevailing view</u>

20  <u>nationally</u>" that "even assuming a strong state policy favoring 'at will' employment

21  – a claim for wrongful discharge, based upon a claim of termination without just

22  cause exists under applicable state law."  (Rooney Decl., ¶ 9, Ex. E (emphasis

23  added).)  In other words, without any California (or federal) law to support him,

24  the Arbitrator ruled at the pleading stage that an at will employee who signs an

25  arbitration agreement <u>may</u> recover in tort for wrongful termination in California in

26  the absence of a public policy violation.

27        After this ruling and before the hearing, CSC urged the Arbitrator to

28  reconsider his decision and pointed out that ignoring California law regarding at

-8-

1   will employment would be appealable in light of the holding in *Cable Connection,*

2   *Inc. v. DirecTV, Inc.*, 44 Cal. 4th 1334, 1361-64 (2008), that courts have the power

3   to correct errors of law where, as here, the Arbitration Award has provided for that

4   contingency.  (Rooney Decl., ¶ 11, Ex. G.)  The Arbitrator denied this request.

5   (*Id.*)

6         CSC also argued before, during and after the hearing that California law

7   does not recognize the tort of wrongful termination in the absence of a public

8   policy violation.  (Rooney Decl. ¶ 14, Exs. J, K, L.)  Varga never squarely

9   addressed the California law issues CSC raised except to say that California courts

10   have not ruled on this issue.  (*See* Rooney Decl., ¶ 8, Ex. C at 14-15.)  Varga

11   stubbornly and persistently ignored Varga's various at will agreements and relied

12   instead on the arbitration provision in the Securities Industry Form U-4 which

13   Varga signed when he joined CSC.  Varga argued that, despite the absence of a

14   "just cause" provision in the U-4, the Eighth and Seventh Circuits had read such a

15   provision into them and that the Arbitrator should follow these Circuits' lead.  (*Id.*)

16   *See Halligan*, 148 F.3d at 204 (It is unnecessary to say that the arbitrator is

17   "deliberately ignoring the law" to show "manifest disregard.").

### C.   The Arbitrator Deliberately Decided Not To Follow California Law

20         There is no evidence in the record that the arbitrator did *not* adopt Varga's

21   argument and proceed to ignore California law.  This fact in and of itself

22   demonstrates a manifest disregard of the law.  *Montes v. Shearson Lehman*

23   *Brothers, Inc.*, 128 F.3d 1456, 1462 (11th Cir. 1997) (clear manifest disregard of

24   the law where arbitrators were told to disregard law and nothing in the record

25   refuted suggestion that law <u>was</u> disregarded).

26         The Arbitrator insisted in the Award that California law should be changed

27   to permit an at will employee who has agreed to arbitrate to sue in tort:

28

14.    As stated in the Arbitrator's Order of August 12, 2008, Claimant's claim for wrongful discharge states a claim for which relief may be granted under California law.  If a California state or federal court is called upon to make that determination, it most likely would so decide and would adopt the better and prevailing view nationally (via federal Circuit Court opinions) that—even assuming a strong state public policy favoring 'at will' employment—a claim for wrongful discharge, based upon a claim of termination without 'just cause' exists under applicable state law, if there is a valid and enforceable contractual provision to arbitrate the circumstances of employment and termination.  *PaineWebber v. Argon*, [*sic*] 49 F.3d 347, 352 (8th Cir. 1995) ('*PaineWebber*'); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312-313 (7th Cir. 1981), cited with approval in PaineWebber.  A principal basis for that determination is a maxim of contractual construction, reflected in the following statement in *PaineWebber*: 'If Agron's employment was purely at will, the arbitration procedure designed to interpret that employment relationship would serve no identifiable purpose.' 49 F.3d at p. 352.  'This [arbitration] process necessarily alters the employment relationship from at will to something else—some standard of discernable cause is inherently required in this context where an arbitration panel is called on to interpret the employment relationship.'  *Id.*

(Rooney Decl., Ex. A at 10:21-11:9.)  In other words, the Arbitrator decided that any agreement to arbitrate employment-related disputes trumps an employee's at will status and paves the way for the employee to recover tort damages.

Both the Arbitrator and Varga make much of the fact that there is no California case that is specifically on all fours with this case, *i.e.*, a case in which a securities industry registrant signed four at will agreements yet sued in tort for wrongful termination without alleging a public policy violation.  However, that observation is relatively meaningless in light of the strength and breadth of the California law that supports CSC's argument and California's public policy of at will employment.  *See, e.g., New York Telephone Company v. Communications Workers of America Local 1100*, 256 F.3d 89, 93 (2d Cir. 2001) ("manifest disregard" found where arbitrator specifically rejected a Second Circuit case and, instead, relied on two more recent opinions from outside the Second Circuit; these opinions were not "the law of this Circuit" and, therefore it was manifest disregard to apply them).  *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir.

1   1998) ("manifest disregard" found where parties sufficiently brought governing

2   law to attention of arbitrators despite fact that panel did not reflect its awareness of

3   law in record); *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126, 129 (2d

4   Cir. 2003) ("manifest disregard" regarding law of *respondeat superior* shown

5   when law regarding *respondeat superior* is "certainly well-defined and explicit in

6   New York" and where parties explicitly made argument in post-hearing brief).

7        The Award: (i) overturns a 20-year old Supreme Court opinion regarding an

8   employee's ability to recover tort damages from his or her employer; and (ii)

9   ignores the significant body of California regarding arbitration which allows

10  employers to both have employment at will and arbitration policies.

11       **D.     There Is No Legal Support For This Expansion of California Law**

12       Not only did the Arbitrator ignore and reject California law in awarding

13  Varga damages for wrongful termination, but the federal case he <u>did</u> rely on does

14  not hold that an express at will employee may recover in tort for termination

15  without cause. *PaineWebber, Inc. v. Agron*, 49 F.3d 347 (8th Cir. 1995), involved

16  a PaineWebber registered representative in Kansas—an at will state—who never

17  signed an express at will employment agreement. An arbitration panel held that

18  PaineWebber improperly terminated Agron's employment for signing a customer's

19  name to an account transfer form. On appeal, the employer argued that Agron's at

20  will status barred his claims and that the arbitration panel's award manifestly

21  disregarded the Kansas employment at will employment doctrine.

22       The Eighth Circuit affirmed the arbitration award reasoning that the

23  arbitration agreement altered "the employment relationship from at will to some

24  thing else – some standard of discernable cause." *Id.* at 352 (citing *Shearson

25  Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 311-313 (7th Cir. 1981)) (contract

26  provided only that the plaintiff would arbitrate any dispute with his employer and

27  did not say that his employment was "at will."), *Truck Drivers Local 705 v.

28  Schneider Tank Lines*, 958 F.2d 171, 175 (7th Cir. 1992) (no "just cause" or

1    arbitration clause) and *Smith v. Kerville Bus Co.*, 709 F.2d 914, 917-18 (5th Cir.

2    1983) (collective bargaining agreement contained <u>no</u> express provision relating to

3    discharge).  However, in so doing, the Eighth Circuit observed that there was no

4    evidence "that the arbitrators' power was expressly limited to application of the

5    Kansas at will doctrine by the terms of the employment agreement" or any other

6    document.  *Id.*

7         Here, on the other hand, Varga signed four express acknowledgements of his

8    at will status.  (Rooney Decl., ¶¶ 2, 4-6, Exs. 4, 6, 301 and 302.)  Not only that, but

9    one of them is set forth in the very Arbitration Agreement <u>that Varga invoked</u>

10   <u>when he filed this claim</u>: "Nor shall this Agreement be construed in any way to

11   change the status of the Employee from at will."  (Rooney Decl., ¶ 2, Ex. 6.)  There

12   is no California or federal case — in the Ninth Circuit or otherwise — which

13   applies the *PaineWebber* holding to an arbitration agreement that <u>specifically</u>

14   <u>confirms an employee's at will status</u>.  Therefore, there is no legal precedent for

15   the Arbitrator's creation of a new tort claim for wrongful termination.  *Guz v.*

16   *Bechtel Nat'l, Inc.*, 24 Cal.4th at 377.

17        The Award also manifestly disregards basic California contract law that: "in

18   the absence of fraud or mistake, the intention of the parties as expressed in the

19   agreement is controlling, and courts are not empowered under the guise of

20   construction or explanation to depart from the plain meaning of the writing and

21   insert a term or limitation not found therein. . . . and [implied] covenants are

22   justified only when they are not inconsistent with some express term of the

23   contract."  *Tanner v. Title Insurance & Trust Co.*, 20 Cal. 2d 814, 824 (1942)

24   (citing *Williston on Contracts*, vol. 5, § 1293).  As one California court explained

25   "[t]here cannot be a valid express contract and an implied contract, each embracing

26   the same subject, but requiring different results.  The express term is controlling

27   even if it is not contained in an integrated employment contract.  Thus, the at will

28   agreement precludes the existence of an implied contract requiring good cause for

-12-

1   termination." *Starzynski v. Capital Public Radio, Inc.*, 88 Cal. App. 4th 33, 38

2   (2001) (internal quotations and citations omitted).  *See also Metoyer v. Chassman*,

3   504 F.3d 919, 936-37 (9th Cir. 2007); *Halvorsen v. Aramark Uniform Services,*

4   *Inc.*, 65 Cal. App. 4th 1383, 1387-89 (1998); *Cruey v. Gannett Co.*, 64 Cal. App.

5   4th 356, 362-63 (1998); *Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th

6   508, 516-22 (1995); *Camp v. Jeffer, Mangels, Butler & Marmaro* 35 Cal. App. 4th

7   620, 629-30 (1995); and *Tollefson v. Roman Catholic Bishop* 219 Cal. App. 3d

8   843, 849-52, 855-57 (1990).  The arbitrator also ignored this well established

9   California law that there cannot be an express and an implied agreement on the

10  same subject as a matter of law.

### E.   Even If There Were Such A Tort, The Arbitrator Found That CSC Had "Just Cause" For The Termination Decision

13          Under California law, an employer has "just cause" for the termination of

14  employment so long as the reason the employer has "fair and honest reasons,

15  regulated by good faith on the part of the employer, that are not trivial, arbitrary or

16  capricious, unrelated to business needs or goals, or pretextual." *Cotran v. Rollins*

17  *Hudig Hall Int'l., Inc.*, 17 Cal. 4th 93, 96, 107-08 (1998)  As the Supreme Court

18  explained:  "[t]he proper inquiry for the [trier of fact], in other words, is not, 'Did

19  the employee *in fact* commit the act leading to dismissal?'  Rather, it is 'Was the

20  factual basis on which the employer concluded a dischargeable act had been

21  committed reached honestly, after an appropriate investigation and for reasons that

22  are not arbitrary or pretextual?'"  *Cotran*, 17 Cal. 4th at 107.  Thus, even where

23  "good cause" or "just cause" is required for the termination of employment, it is

24  not appropriate to determine whether the decision was right.

25          Here, although the Arbitrator concluded that Varga was not "insubordinate,"

26  the Arbitrator specifically found that CSC's decision to terminate Varga was not

27  "hasty or careless" and that CSC acted in "good faith" in deciding to dismiss

28  Varga.  (Rooney Decl., Ex. A at 3:16-5:16.)  Nevertheless, the Arbitrator

-13-

1   determined that, because CSC was factually wrong in its assertion that Varga

2   engaged in insubordination, it did not have "just cause" for its decision and Varga

3   could recover on his wrongful discharge claim.  Such a finding manifestly

4   disregards California law, is illogical and should be vacated.  *See Comedy Club,*

5   *Inc. v. Improv West Associates*, 553 F.3d 1277, 1290 (9th Cir. 2009); *Schoenduve*

6   *Corp. v. Lucent Technologies, Inc.*, 442 F.3d  727, 731 (9th Cir. 2006).

**III.   THE AWARD SHOULD BE VACATED FOR MANIFEST**
**DISREGARD OF THE LAW**

### A.   The "Manifest Disregard of the Law" Standard

10   Arbitrators are not empowered to ignore the law and to dispense their own

11   brand of justice.  *Freightliner, LLC v. Teamsters Local 305*, 336 F.Supp.2d 1118

12   (D. Or. 2004) (arbitrator's conclusion that Oregon medical marijuana act precluded

13   employer from dismissing employee who tested positive for marijuana use, albeit

14   pursuant to a prescription, constituted "manifest disregard of the law"); *Montes v.*

15   *Shearson Lehman Brothers, Inc.*, 128 F.3d 1456 (11th Cir. 1997).  Under the

16   Federal Arbitration Act ("FAA"), a court must vacate an arbitration award where

17   "the arbitrators exceeded their power or so imperfectly executed them that a

18   mutual, final, and definite award was not made."  9 U.S.C. § 10(a)(4).  Arbitrators

19   "exceed their power" if the award rendered is "completely irrational, or exhibits a

20   manifest disregard of the law."  *Comedy Club, Inc. v. Improv West Associates*, 553

21   F.3d 1277, 1290 (9th Cir. 2009); *Schoenduve Corp. v. Lucent Technologies, Inc.*,

22   442 F.3d 727, 731 (9th Cir. 2006).  Where it is "clear from the record that the

23   arbitrators recognized the applicable law and then ignored it," an arbitration award

24   should be vacated.  *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832

25   (9th Cir. 1995).

### B.   Examples of "Manifest Disregard"

27   Courts have provided various definitions and examples of "manifest

28   disregard of the law" which are instructive here:

-14-

1.      *Ignoring Applicable Law*

Ignoring applicable law is "manifest disregard" and is sufficient to support vacatur of an arbitration award.  *See New York Telephone Company v. Communications Workers of America Local 1100*, 256 F. 3d 89, 93 (2d Cir. 2001) ("manifest disregard" where the arbitrator ignored the law of the forum and relied, instead, on law from others circuits); *Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F. 3d 1060, 1069 (8th Cir. 2002) ("manifest disregard" where the arbitration panel awarded attorneys' fees to a commercial trader even though Minnesota law limited such awarded to parties engaged in consumer transactions).

In *Comedy Club, Inc.*, 553 F.3d at 1281-84, an action for breach of a trademark agreement, the arbitrator issued two permanent injunctions which purported to bind non-party relatives and ex-spouses of contracting parties to the trademark agreement.  On appeal, CCI argued that the permanent injunction sought to bind persons beyond the scope of the arbitrator's authority.  The Ninth Circuit agreed that the arbitrator acted beyond the scope of his authority "as a matter of California law" because the attempt to bind non-parties was contrary to California case law and Cal. Bus. & Prof. Code § 16600 regarding covenants not to compete. *Id*. at 1288.  The Ninth Circuit also vacated the arbitration award to the extent it validated a covenant not to compete in the trademark agreement.  The Ninth Circuit concluded that the arbitrator's validation of the non-compete clause was inconsistent with California case law that "in term" covenants not to compete are also void under Cal. Bus. § Prof. Code § 16600 if they prevented a party from engaging in its business or trade in a substantial section of the market.  The Ninth Circuit reasoned that the arbitrator had disregarded the case law and that his grounds for doing so were "fundamentally incorrect."  Thus, the Ninth Circuit concluded that the arbitrator's validation of the covenant not to compete ignored § 16600 and, therefore, was "in manifest disregard of the law." *Id.* at 1293.

-15-

1    Here, the Arbitrator clearly ignored well established California law

2    regarding the effect of at will employment, the prerequisites to an award of tort

3    damages for wrongful termination, the contractual nature of employment law

4    claims in California and contract interpretation.  This is a manifest disregard of the

5    law.  (*See Comedy Club, Inc.*, 553 F.2d at 1290; *Schoenduve Corp.*, 442 F.3d  at

6    731.)

7                    2.    *Legal Irreconcilability with Undisputed Facts*

8                An arbitration award that is legally irreconcilable with the undisputed facts

9    constitutes a manifest disregard of the law and should not be confirmed.  *Coutee v.*

10   *Barington Capital Group, L.P.*, 336 F.3d 1128, 1133 (9th Cir. 2003).  *See*

11   *American Postal Workers Union AFL-CIO v. United States Postal Serv.,* 682 F.2d

12   1280, 1284-86 (9th Cir. 1982), *cert. denied*, 459 U.S. 1200, 75 L. Ed. 2d 431, 103

13   S. Ct. 1183 (1983) (Ninth Circuit denied enforcement of award that ordered

14   reinstatement of union member who was terminated for participating in illegal

15   work stoppage as required by 5 U.S.C. § 7311; termination was mandated by law

16   and conclusion that union member did <u>not</u> participate in the strike would constitute

17   "manifest disregard of the law"); *see also Halligan*, 148 F. 3d at 204 ("in view of

18   the strong evidence that Halligan was fired because of his age and the agreement of

19   the parties that the arbitrators were correctly advised of the applicable legal

20   principles" arbitrators "manifestly disregarded" the law in denying Halligan's

21   ADEA claim); *Montes*, 128 F. 3d at 1464 (11th Cir. 1997) (where evidence did not

22   support Shearson's claim that Montes was an exempt employee and where

23   Shearson's lawyer encouraged arbitrators to disregard applicable law, finding that

24   Montes was not entitled to overtime pay "manifestly disregarded" the law); and

25   *Frieghtliner, LLC v. Teamsters Local 305*, 336 F. Supp. 2d 1118, 1127 (D. Or.

26   2004) ("manifest disregard" where arbitrator "effectively applied his own notions

27   of what the law should be" and read a state statute to invalidate provisions of a

28   CBA).  An arbitrator may not ignore well-settled legal principles which, applied to

-16-

1   the undisputed facts of the case, would mandate a particular outcome.  *Wien &*

2   *Malkin LLP v. Helmsley-Spear, Inc.*, 12 A. D. 3d 65, 71-72 (N.Y. App. Div. 2004)

3   (manifest disregard where arbitrators ignored the agreements of the parties and

4   well-settled legal principles (which had been raised by counsel) in arriving at their

5   conclusion).

6         Here, the facts are undisputed: Varga was an at will employee and did not

7   allege a public policy violation.  The Arbitrator's conclusion that this supports an

8   award of tort damages is irreconcilable with California law and should be vacated.

9                   *3.*    *Legal Impossibility*

10         There is also "manifest disregard of the law" when an award relies upon a

11   logical impossibility.  For example, in *Hardy v. Walsh Manning Securities, L.L.C.*,

12   341 F.3d 126, 128-130 (2d Cir. 2003), the arbitrators found the manager of a

13   brokerage firm liable for the conduct of another employee based upon respondeat

14   superior.  The Second Circuit concluded that, because the manager was actually

15   the complaining employee's "fellow worker," it was logically impossible for him

16   to be held liable under a respondeat superior theory.  Thus, the award constituted a

17   "manifest disregard of the law."

18         Here, the Award is based upon a logical and legal impossibility—the

19   existence of an "implied" agreement which directly contradicts the parties' express

20   agreement.  *See Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal. App. 4th at 37-38;

21   *Halvorsen v. Aramark Uniform Services, Inc.*, 65 Cal. App. 4th at 1388 (cases

22   supporting the proposition that there cannot be a valid express contract and an

23   implied contract, each embracing the same subject but requiring different results).

24   Therefore, the Award constitutes a manifest disregard of the law.

25   **C.**    **The Arbitrator Knowingly Rejected California Law And Thus**

26            **Exceeded His Powers**

27         In determining whether an arbitrator has exceeded his or her authority,

28   courts distinguish between an erroneous interpretation of the law (which is not

-17-

1  reviewable on appeal) and a "clear disregard for the law."  *Wilko v. Swan*, 346 U.S.

2  427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953), *overruled on other*

3  *grounds, Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 109

4  S.Ct. 1917, 104 L.Ed. 2d 526 (1989).  Here, there can be no doubt that the

5  Arbitrator knew what the law is:  CSC briefed the law on several occasions, the

6  Arbitrator knew the undisputed facts regarding Varga's multiple

7  acknowledgements of his at will employment status.[1]  The Arbitrator carefully

8  avoided any mention of California law in paragraph 14 of the Award and indirectly

9  but pointedly signaled his view that California law should be changed.  This

10  obvious manifest disregard of the law should be reversed by this Court.

11                                    **Conclusion**

12         For the foregoing reasons, CSC respectfully submits that its Petition to

13  Vacate should be granted and that the Award of wrongful discharge damages

14  should be set aside.

15  DATED: July 20, 2009                    SEYFARTH SHAW LLP

16

17                                    By    /s Karen A. Rooney
                                            Karen A. Rooney
18                                          Eileen C. Zorc
                                            Attorneys for Petitioner
19                                          COUNTRYWIDE SECURITIES
                                            CORPORATION
20

21

22

23

24  _____

25  [1] In the interim award, the Arbitrator referred only to the Securities Industry Form
    U-4 as the basis for this arbitration.  (Rooney Decl., ¶ 15, Ex. N.)  The U-4 is silent
26  on the issue of at will employment; under California law, this means the
    employment to the Arbitrator that was at will.  (*Id.* at ¶ 15, Ex. 18; Cal. Labor
27  Code § 2922.)  When CSC pointed out the parties' arbitration agreement does
    contain an at will provision, the Arbitrator changed the text of the award to refer to
28  it (including its at will clause) – an implicit recognition of Varga's at will status.

-18-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF KAREN A. ROONEY

I, Karen A. Rooney, declare as follows:

1.      I am a member of the Bar of the State of California and am Of Counsel at Seyfarth Shaw LLP, attorneys for petitioner in the captioned matter.  I make the following declaration in support of petitioner Countrywide Securities Corporation's (CSC) Petition to Vacate Arbitration Award In Part.  I have personal firsthand knowledge of the following facts and if called to testify, I could and would testify competently to them.

2.      Brian Varga is a former CSC employee who was employed as a Treasury Trader and co-head of the U.S. Treasury desk from July 10, 2006, to February 8, 2008.  Attached as Exhibit 4 is a true and correct copy of the written employment agreement dated June 14, 2006 that respondent entered into with CSC when he became a CSC employee, and which claimant attached to his original demand and statement of claim.  This exhibit was admitted into evidence at the arbitration hearing in February 2009.

3.      On April 14, 2008, respondent filed a "demand and statement of claim for arbitration before JAMS under its Employment Arbitration Rules & Procedures pursuant to a written arbitration agreement between the parties dated June 4, 2006."  A true and correct copy of the Arbitration Agreement dated June 4, 2006 that Varga entered into with CSC when he became a CSC employee, and which claimant attached to his original demand and statement of claim, is attached as Exhibit 6.  Attached as Exhibit 18 is a true and correct copy of Varga's Form U-4, which was admitted into evidence at the arbitration hearing in February 2009.  A true and correct copy of the demand and statement of claim is attached as Exhibit 19.  These exhibits were admitted into evidence at the arbitration hearing in February 2009.

4.      Attached as Exhibit 51 is a true and correct copy of the June 24, 2008 CSC Change in Control Severance Plan.  This exhibit was admitted into evidence at the arbitration hearing in February 2009.

5.      Attached as Exhibit 301 is a true and correct copy of respondent Brian Varga's employment application dated June 4, 2006 with CSC containing an at will employment provision.  This exhibit was admitted into evidence at the arbitration hearing in February 2009.

6.      Attached as Exhibit 302 is a true and correct copy of respondent's signed acknowledgment of employee handbook containing an at will employment provision dated July 10, 2006.  This exhibit was admitted into evidence at the arbitration hearing in February 2009.

7.      **Arbitration**         The five-day arbitration hearing took place in February 2009.  On May 26, 2009, JAMS Arbitrator the Honorable Stephen E. Haberfeld entered the Arbitration Award in Brian Varga, an individual, v. Countrywide Securities Corporation, a business entity, JAMS No. 1425001975 (Arbitration Award).  The Arbitrator issued a final award in favor of Varga and awarded damages on two claims:  breach of contract; and wrongful termination. Countrywide paid Varga the breach of contract damages awarded.  A true and correct copy of the final Arbitration Award dated May 26, 2009, is attached as Exhibit A.

8.      **Motion to Dismiss**         On May 30, 2008, petitioner moved to dismiss respondent's wrongful termination claim on the ground that respondent could not allege, prove or recover on a wrongful termination claim because he was an at will employee.  True and correct copies of petitioner's Motion to Dismiss dated May 30, 2008, respondent's Opposition to Motion to Dismiss dated June 27, 2008, and petitioner's Reply Memorandum of Points and Authorities in Support of Motion to Dismiss dated July 14, 2008, are attached as Exhibits B, C and D, respectively.

9.     The Arbitrator denied petitioner's Motion to Dismiss and held that, because respondent signed an arbitration agreement, despite respondent's status as an at will employee, and despite the absence of any California case on point, respondent could recover in tort for wrongful termination.  True and correct copies of the orders on petitioner's motion to dismiss dated August 12, 2008 are attached as Exhibit E.

10.     The parties requested clarification of the August 12, 2008 Order.  On September 10, 2008, Judge Haberfeld issued a clarification to his August 12, 2008 Order.  A true and correct copy of the clarification is attached as Exhibit F.

11.     On October 6, 2008, petitioner wrote to Judge Haberfeld requesting that, at the October 7, 2008 Status Conference, the Arbitrator reconsider his Order on the Motion to Dismiss with respect to the "attempted extortion" and breach of contract claims.  A true and correct copy of the statement is attached as Exhibit G. At the October 7, 2008 Status Conference, the Arbitrator denied petitioner's request for reconsideration of his Order on the Motion to Dismiss.

12.     Attached as Exhibit H is a true and correct copy of the cited testimony of Brian Varga and discussion by counsel and the Arbitrator on the record, at the arbitration hearing on February 5 and 6, 2009.

13.     CSC filed an Arbitration Brief dated January 28, 2009, a Post-Hearing Brief dated March 28, 2009, and a Post-Hearing Reply Memorandum dated April 15, 2009.  True and correct copies of these briefs are attached as Exhibits I, J and K, respectively.

14.     On May 19, 2009, petitioner filed a Request for Correction of the Arbitration Award.  Attached as Exhibit L is a true and correct copy of petitioner's request for correction and attached as Exhibit M is a true and correct copy of the original award issued May 12, 2009.

15.     **State Court Petition to Vacate**          On May 27, 2009, Countrywide petitioned to vacate the Arbitration Award in part and to the extent it awarded

1   Varga additional wrongful termination damages on the ground that this part of the

2   Arbitration Award constituted an "error of law"—an agreed-upon basis for review

3   of any arbitration award under the parties' Arbitration Agreement.  (*Countrywide*

4   *Securities Corporation v. Brian Varga*, Case No. BS120925, Superior Court of the

5   State of California for the County of Los Angeles).

6       16.   **Removal**    Varga removed this action and filed a motion to confirm

7   the arbitration award on June 11, 2009.  Varga has not contacted Countrywide for

8   the purpose of meeting and conferring regarding his motion to confirm the

9   arbitration award and did not do so before filing the motion.

10      17.   **Meet and confer under Local Rule 7-3**    On June 16, 2009, and in

11  accordance with Local Rule 7-3, I emailed Blaine Bortnick, Varga's counsel, to

12  advise him that Countrywide intended to file two motions:  (i) a motion to remand

13  or, in the alternative, to determine standard of review; and (ii) a petition to vacate

14  the arbitration award.  I informed Mr. Bortnick that Countrywide wanted to meet

15  and confer with Varga before filing these motions as required by the Local Rules.

16  A true and correct copy of my email to Mr. Bortnick is attached as Exhibit N.

17      18.   On June 17, 2009, Mr. Bortnick responded by email, a true and

18  correct copy of which is attached as Exhibit O.  Mr. Bortnick suggested meeting

19  and conferring telephonically about Countrywide's motions on June 17, 2009, at

20  10:00 a.m., California time.  I confirmed this date and time in a return email to

21  Mr. Bortnick.

22      19.   On June 17, 2009, I met and conferred with three attorneys for Varga-

23  -Mr. Bortnick, Jessica Savage and Robert Cohen.  I advised Varga's counsel of the

24  grounds for Countrywide's motion to remand.  More specifically, I stated that

25  Countrywide would argue that the parties agreed to a review of any arbitration

26  award for errors of law in a court of "appropriate jurisdiction" and that

27  Countrywide properly filed the petition to vacate the arbitration award in state

28  court because, under *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal. 4th 1334,

1361, 1364 (2008), California state courts will review arbitration awards for errors of law if the parties agree to such review as they did here.  Therefore, state court is the "appropriate jurisdiction" for Countrywide's petition to vacate the Arbitration Award and not federal court.  I also advised Varga's counsel that Countrywide would move in the alternative to have the standard of review determined by the federal court, should the Court decline to remand, and to request an order that this Court review the Arbitration Award in accordance with the parties' contract. Finally, I advised Varga's counsel that Countrywide intended to refile its motion to vacate the arbitration award for hearing in federal court.

20. The parties were unable to resolve the issues informally.

21. Mr. Bortnick advised Countrywide's counsel that Varga had served a motion for Rule 11 sanctions.  Countrywide's counsel clarified that this meet and confer was not intended to relate to that motion and Mr. Bortnick agreed to this.

22. On June 17, 2009, I confirmed the meet and confer in an email to Mr. Bortnick, a true and correct copy of which is attached as Exhibit P.  I later clarified to Mr. Bortnick that Countrywide was no longer going to include an alternative request its motion to remand that this Court determine the standard of review applicable to the Arbitration Award.

I declare under penalty of perjury under the laws of the United States of America and the State of California and that the foregoing is true and correct.

Executed this 20th day of July, 2009 at Los Angeles, California.

/s/ Karen A. Rooney
Karen A. Rooney

LA1 6887741.5 / 35422-000133

# PROOF OF SERVICE

STATE OF CALIFORNIA )
                     )  ss
COUNTY OF LOS )
ANGELES

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Seyfarth Shaw LLP, 2029 Century Park East, Suite 3500, Los Angeles, California 90067-3021. On the date set forth below, I served the within document(s): **NOTICE OF HEARING ON PETITION TO VACATE ARBITRATION AWARD IN PART; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KAREN A. ROONEY**

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☒ electronically by using the Court's ECF/CM System.

| | |
|---|---|
| Robert W. Cohen | Blaine H. Bortnick |
| Law Offices of Robert W. Cohen | Liddle & Robinson, L.L.P. |
| 1875 Century Park East, | 800 Third Avenue |
| Suite 1770 | New York, N.Y. 10022 |
| Los Angeles, CA 90067 | *bbortnick@liddlerobinson.com* |
| *rwc90067@aol.com* | **ATTORNEYS FOR** |
| **ATTORNEYS FOR** | **RESPONDENT** |
| **RESPONDENT** | |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

Executed on July 20, 2009, at Los Angeles, California.

Rebecca Garner

LA1 6886082.1 / 35422-000133